RACHEL CULBERTSON *vs.* HENRY G. Cox, Administrator, and another.

July 19, 1882.

Insurance Policy on Homestead, issued to Husband—Loss by Fire after his Death—Interest of Widow, Heirs, etc., in Insurance Money.—C., in his life-time, effected an insurance against loss by fire upon a dwelling-house owned by him, and occupied by himself and family as a homestead. The policy of insurance ran to himself and his personal representatives. Upon his death the plaintiff, his widow, was entitled to hold the premises as a homestead during her natural life. After his death, and during the life of the policy, and while the plaintiff continued to occupy the premises as such homestead, the dwelling-house was destroyed by fire. *Held*, that the interest in the policy devolved upon those beneficially interested in the real estate, and, in case of loss, the damages accrued to them. That if the administrator collected or received the proceeds of the policy, he would not hold them as a part of the general personal estate of C., but as trustee for the widow, creditors, and heirs, in accordance with their respective interests in the real estate itself. That, therefore, the plaintiff, being entitled to hold the real estate for the period of her natural life, was entitled to the use for life of the insurance money.

Appeal by defendant Cox from an order of the district court for Winona county, *Start*, J., presiding, refusing a new trial. The case is stated in the opinion.

*Wilson & Gale*, for appellant, to the effect that a contract of insurance does not run with the land, but is a mere personal contract of indemnity to the person with whom it is made, and under no circumstances to be construed for the benefit of those not specified in the contract, cited Wood on Fire Ins., §§ 2, 249, 310, 344; May on Ins., § 6; *Newman* v. *Home Ins. Co.*, 20 Minn. 422; *Saddlers' Company* v. *Badcock*, 2 Atkyns, 554; *Powles* v. *Innes*, 11 M. & W. 10; *Columbia Ins. Co.* v. *Lawrence*, 10 Pet. 507; *Carpenter* v. *Providence Washington Ins. Co.*, 16 Pet. 495; *Wilson* v. *Hill*, 3 Met. 66; *Carroll* v. *Boston Mar. Ins. Co.*, 8 Mass. 515; *McIntire* v. *Plaisted*, 68 Me. 363; *Cushing* v. *Thompson*, 34 Me. 496; *Wooster* v. *Page*, 54 N. H. 125; *Cummings* v. *Cheshire Co. Ins. Co.*, 55 N. H. 457; *Carter* v. *Rocket, etc., Ins. Co.*, 8 Paige, 437; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 386; *McDonald* v. *Black*, 20 Ohio, 185; *Disbrow* v. *Jones*, Har. (Mich.) 48; *Eichelberger* v. *Miller*, 20 Md. 332; *Raynor* v. *Preston*, 10 Ins. L. J. 76.

*Berry & Morcy*, for respondent.

MITCHELL, J.   In his lifetime Wilson Culbertson effected an insurance against loss by fire upon a dwelling-house owned by him, and occupied by himself and plaintiff, who was his wife, as a homestead. The policy itself is not in evidence, and the finding of the court below is that the insurance company "insured the said Culbertson against loss by fire," etc.   We shall assume that it was in the usual form, and ran to the insured, his executors, administrators, and assigns.   After his death, and during the life of the policy, and while plaintiff, as his widow, still continued to occupy the premises as a homestead,—and to which, under the statute, she was entitled during her natural life,—the house was destroyed by fire.   The insurance company had adjusted the amount of the loss with the defendant as administrator, and was about to pay the proceeds of the policy to him, when plaintiff brought this action against the administrator and the insurance company, claiming the money.   The insurance company paid the money into court, and thereupon the action proceeded

between the widow and the administrator. The court below held that the proceeds of the policy partook of the character of the real estate, and were affected with a trust for the benefit of the parties interested in such real estate, and that the plaintiff, as widow of the deceased, was entitled to the use of the money during her life—the same interest she was entitled to in the property destroyed—and gave her judgment for a sum in gross equal to the present worth of this life interest. From this judgment the administrator appeals. His contention is that a policy of insurance, being purely a personal contract with the insured, and not in its nature incident to the property which is the subject-matter of the insurance, does not pass by a transfer of the property, and therefore that the personal representative of the insured is entitled to the proceeds of the policy as a part of the general personal estate of the deceased. The plaintiff's contention is that the proceeds of the policy are not a part of the general personal estate of the deceased, but are affected with a trust for the benefit of the parties interested in the real estate, and are a substitute for the property itself, and that, therefore, she is entitled to the same interest in the fund which she had in the house destroyed.

It is somewhat remarkable that but few cases can be found in which a question of so much interest, and which would be likely to arise in some form so frequently, has been considered. It is now too well settled to be questioned, that policies of insurance against fire are personal contracts with the assured, which do not attach to the realty, or in any manner go with the same, as incident to a conveyance or transfer of the title to lands; that the contract is confined to the parties; and that, as a general rule, no equity attaches upon the proceeds of such policies in favor of third parties, who, in the character of grantee, mortgagee, or creditor, may sustain loss by the destruction of the property. In accordance with this doctrine, it is also well settled that a sale or transfer of the property which is the subject-matter of the insurance will deprive the vendor of all interest in the policy, without conferring the right to enforce it on the vendee; the vendor being precluded from recovering from the fact that, having no interest in the property, he has suffered no loss;

and the vendee, because he can claim nothing under a contract to which he is a stranger, and which was not made with a view to his benefit.

If this were an open question, much might be said in favor of the view that insurance is a mere accessory which (in the absence of anything in the policy prohibiting it) should pass with the transfer of the principal, unless the parties manifest an opposite intention. See *Sparkes* v. *Marshall*, 2 Bing. (N. C.) 761; Emerigon, *c.* 16, § 3. But to the extent already stated, the doctrine of the purely personal character of such policies is too firmly established to be now questioned. But it is sometimes sought to apply this doctrine to cases to which we think it has no application. We find in the text-books statements to the effect that such a policy being purely a personal contract, not incident to the realty, neither grantee, heir, nor devisee have any interest in the proceeds, unless there be a valid assignment of the policy; that the administrator or executor of the estate of the insured alone is entitled to the benefit of it as a part of the general personal estate of the deceased. It might be well to examine what authority can be found in the adjudicated cases for such broad and unqualified statements. The whole superstructure of the decisions upon this subject of the personal character of a contract of insurance, rests upon the foundation of two English cases, which are almost always cited, viz.: *Lynch* v. *Dalzell*, 4 Brown, Parl. Cases, 431, and *Saddlers' Company* v. *Badcock*, 2 Atkyns, 554.

In the first of these cases, Lord Chancellor King remarked: "These policies were not insurances of the specific things mentioned to be insured, * * * nor did such insurances attach on the realty, or in any manner go with the same, as incident thereto, by any conveyance or assignment, but they were only special agreements with the persons, insuring against such loss or damage as they should sustain. * * * The party insuring must have a property at the time of the loss, or he could sustain no loss, and consequently be entitled to no satisfaction." This case was cited with approbation by Lord Hardwicke, and relied upon by him as the ground of his opinion, in the case of the *Saddlers' Company* v. *Badcock*, already referred to. In deciding this case he uses this language: "I am of opinion it is nec-

essary the party insured should have an interest or property at the time of the insuring, and at the time the fire happens. \* \* \* The society are to make satisfaction, in case of any loss by fire. To whom, or for what loss, are they to make satisfaction? \* \* \* Why, to the person insured, and for the loss he may have sustained; for it cannot properly be called insuring the thing, for there is no possibility of doing it, and therefore must mean insuring the person from damage."

To the extent to which these cases go, they are undoubtedly the law; and in most of the subsequent cases, whose number is legion, where it has been held that such a policy is a personal contract with the insured, and that it is the person and not the thing which is insured, it will be found that the contest was between the insured and his grantee, mortgagee, or creditor, who claimed an interest in the proceeds of the policy by virtue of his conveyance of or lien upon the property which was the subject of the insurance, or between the insurance company and the insured, who sought to recover for a loss which happened after he had conveyed away his interest in the property. But where the insured dies seized of the property during the life of the policy, and the property descends or passes, by operation of law or will, to his heirs, widow, or devisees, we fail to see on what principle it can be held that the personal representative, who may have no interest whatever in the property, and hence may have sustained no loss, is entitled to recover the proceeds of the policy, as a part of the general personal estate of the insured, and that the widow, heirs, or devisees, who have really sustained the loss, have no interest in the fund when recovered. Such a doctrine appears to us both inequitable and illogical. That it is inequitable would seem to us self-evident. That it is illogical we think can readily be made to appear.

Upon the principle that a policy of insurance is purely a personal contract of indemnity with the insured, it has been settled that, in order to recover upon it, he must have still had an interest in the property which was the subject-matter of the insurance at the time of its destruction, for otherwise he would have sustained no loss. Hence if the insured have conveyed away in his life-time all interest

in the property before loss, he cannot recover. How, then, can the personal representative, who has no interest in the property unless there be debts, be entitled to. the proceeds of the policy, since it is the heir, widow, or devisee, and not he, who has really sustained the loss. It is impossible to reconcile the claim of the personal representative to hold the insurance money as part of the general personal assets of the deceased with well-recognized legal principles.

The doctrine that not only the right of action, but the beneficial interest in the contract of insurance, passes to the personal representative, fails when put to the test; for he has no legal estate, and not necessarily any beneficial interest in the property. We think the suggestion that the heirs or devisees have no interest in the policy of insurance is based upon the false idea that they stand in the same relation to the insured, and to the policy, as a grantee or mortgagee of the premises would, and hence that they are entire strangers to the contract of insurance. We do not think that the widow, heir, or devisee, upon whom the property devolves upon the death of the insured, are strangers to the contract of insurance. Neither are they and the personal representatives strangers to each other; for both acquire their rights from the deceased by a devolution or transfer which is not forbidden by the policy. Both represent the insured, the title to the property, and the beneficial interest in the policy; passing to the widow, heir, or devisee; while the right of action to recover upon the policy is by its terms vested in the administrator or executor, while the interest in the property, which was requisite to sustain the action, belongs to others. Whether the personal representative is the only person who might sustain an action on the policy is not involved in this case, and is not now decided; but, when recovered by him, the proceeds of such policy stand in his hands as trustee for those beneficially interested in the property, and not as general personal assets, but as a substitute for the property destroyed.

An examination of the authorities discloses the fact that the assertions of text-writers to the effect that the heir or devisee has no interest in the policy, but that the entire beneficial interest in its proceeds belongs to the personal representatives, as a part of. the general personal estate of the deceased, rest upon a very slim foundation.

The case invariably cited as authority for this proposition is *Mild-may* v. *Folgham*, 3 Ves. Jr. 471; but an examination of this case shows that it went off entirely upon the peculiar nature of the provisions contained in the deed or constitution of the insurer. The "Hand-in-Hand Office," which was the insurer, was in the nature of a partnership between the insured. The thirty-fourth article of the deed entered into by the members declared that in case of the death of any member his interest "*shall survive to his executors, administrators, or asssigns, who shall be possessed of the policy.*" The lord chancellor, in deciding the case, says: "It seems to me perfectly clear, upon the plan of the society, * * * that it is not like the other insurance offices since established. * * * No person can have the benefit of the policy but the personal representative with whom they make up the account, and who is entitled to the dividend. * * * The article is very intelligible and consistent. The foundation is a partnership between the different persons insuring each other in a society established upon a constitution by which they mutually engage to each other to answer all losses any one of them may incur. *You cannot make a partnership for yourself and your heirs, but you may for yourself and your executors.*"

The only other case we have found tending to sustain the position under consideration is *Wyman* v. *Prosser*, 36 Barb. 368. This, of course, is not the decision of a court of last resort. Moreover, much that was said in that case was mere *dictum*, because, upon the facts of the case, the personal representative was, in any event, entitled to retain the proceeds of the policy as against the heir, because the estate was insolvent, and hence the whole fund was needed to pay debts.

The position which we have suggested and urged, to wit, that the proceeds of the policy belong to those beneficially interested in the property, is not without authority to sustain it. In the case of *Parry* v. *Ashley*, 3 Simons, 97, the testator charged his real estate with an annuity to his widow, and, subject thereto, devised it to A. in fee, and appointed A. executrix. The testator had insured the property in his own name. The policy expired a few months after his death, and was renewed by A. Soon after the property burned. The

widow filed a bill against A. for an account, and security of the annuity. The court ordered the insurance money to be paid into court, it being taken that A. had renewed in the character she was entitled to renew, viz., as executrix; the vice-chancellor remarking: "The inclination of my opinion is that the proceeds of the policy cannot be considered as part of the testator's general personal estate, but that they are affected with a trust for the benefit of the parties interested in the real estate, and *prima facie* there is much ground for holding that the proceeds of the policy are a substitution for the property charged."

In *Durant* v. *Friend*, 11 Eng. Law & Eq. 2, the facts were that the testator, a seafaring man, bequeathed chattels to certain persons. He and the chattels perished together. These chattels he had previously insured, and the executors received from the insurance company the amount of the policy. The question was whether the legatees were entitled to the money. It was decided that as the testator and the chattels perished together, the legatees never had any vested interest in the chattels, and hence were not entitled to the insurance money; but the chief justice, in his opinion, remarked: "If the testator had died leaving the goods in existence, the legatees would have had an interest in them, and it would have been quite reasonable that the executors should have held the policy in trust for them. See, also, *Norris* v. *Harrison*, 2 Madd. 268.

In this country, the case of *Haxall* v. *Shippen*, 10 Leigh, 536, is a well-considered case in the court of appeals of Virginia. The facts in the case were that one Shore died, leaving a plantation by will to his widow for life, and remainder to his children. He had taken out a policy of insurance on the buildings, running to himself, his heirs and assigns. After his death, and during the life of the policy, the buildings burned. Without further relating the history of the case, we will admit that it is not really an authority directly in point, because a decree in a former suit was held conclusive upon the rights of the parties, and because the policy ran to the deceased and his *heirs* and assigns. But the reasoning of the court in the case fully sustains our views. See, also, *Brough* v. *Higgins*, 2 Gratt. 408.

But the fullest discussion and most direct decision upon this question that we have found, is by the court of appeals of New York, in the case of *Wyman* v. *Wyman*, 26 N. Y. 253, in which they held that when the policy runs to the assured, his executors, or administrators, the personal representative may maintain an action as trustee for those beneficially interested in the real estate, and that the damages recovered stand in his hands, not as general personal assets, but as realty, subject to dower and to the lien of creditors by judgment, before distribution among the heirs-at-law. The court takes the position, and, we think, fully sustains it, that the proceeds of the policy belong to those beneficially interested in the property, and that the only theory upon which the personal representative can maintain an action upon the policy is that he is trustee for those beneficially interested in the property at the time of the loss. The same doctrine is again laid down by the same court in *Herkimer* v. *Rice*, 27 N. Y. 163, and, so far as we are aware, has never since been questioned in that state.

No point is made in the present case upon the fact that the court below gave plaintiff a sum in gross, instead of the use or income of the fund, and hence we have not considered whether the method adopted is the correct one or not. The plaintiff was not estopped from asserting her rights to this homestead by the contract of separation between her and her husband, set up in answer. If such agreements be not, under all circumstances, void as against law and public policy, this one, at least, would not bind the plaintiff: *First*, because its terms were never performed by her husband; and, *second*, because, as found by the court below, it is wholly inadequate and inequitable in its provisions for the support of the wife.

Judgment affirmed.